SARAH A. BRONSON, AS ADMINISTRATRIX OF MARGARET A. DOANE, DECEASED, APPELLANT, *v.* HENRY S. MUNSON, RESPONDENT.

*Statute of limitations — it does not begin to run in favor of an attorney until he has notified his client that the claim has been collected.*

In 1864 the plaintiff's intestate placed in the hands of the defendant, an attorney and counselor-at-law, for collection, a claim against the United States government for a pension, made by her as the widow of her late husband, who had died in its service. The defendant prosecuted the claim before the proper department of the government, and on or about February 17, 1865, a certificate was issued by the treasurer of the United States to the intestate for $347.33, which certificate was received, and the money due thereon collected, by the defendant. While the application was pending the defendant told the intestate that there was no law which would give her any bounty or back pay. For that reason all attempts to get it were given up, and the matter was not alluded to between the parties until the year 1879, when the intestate first learned that the certificate had been received and collected by the defendant. This action, to recover the amount so collected, was commenced in 1880.

*Held,* that the statute of limitations did not begin to run against her claim until she had been notified that the money had been received by the defendant, and that plaintiff was entitled to recover.

THE plaintiff was nonsuited at the Jefferson County Circuit, to which the plaintiff excepted, and the exception was directed to be heard at the General Term in the first instance.

The action was originally commenced in the name of Margaret A. Doane, who is now deceased, and the plaintiff has been substituted as her personal representative. The action was commenced February 9, 1880, and came on to be tried in December of the same year. It is stated in the complaint that in 1864 Margaret A.

Doane, the plaintiff, made a claim against the United States government for a pension, as the widow of her late husband, Hiram Doane, who died in the military service as a soldier in the United States army, and employed the defendant as her attorney to prosecute the claim; that the defendant was an attorney and counselor-at-law, practicing his profession, and after being engaged by the plaintiff, prosecuted the claim before the proper department of the United States government, and on or about February 17, 1865, a certificate was issued by the treasurer of the United States to the plaintiff for the sum of $347.33, and that such certificate was received by the defendant as attorney for the plaintiff. And thereafter, and on or about the 25th of March, 1865, the defendant, as such attorney, received the money on the certificate, and that the same belonged to the plaintiff. The complaint also avers that the plaintiff was wholly ignorant of the receipt by the defendant of the said money, or any part thereof, until on or about June 7, 1879, the defendant having, all the time from the receipt of said money up to said last-mentioned day, fraudulently concealed from the plaintiff the fact that he had received the said money, or any part thereof; that on the 15th of September, 1879, the plaintiff demanded of the defendant the said sum of money, and that he neglected and refused to pay over the same. The defendant admits that the plaintiff's intestate engaged him to collect the money, as her attorney and agent, and that he received the certificate mentioned and collected the money thereon, as stated in the complaint, and pleads as a defense a payment over of the money to the plaintiff's intestate and the statute of limitations in bar of a recovery. Upon the trial, after a jury was impanneled, the counsel for the plaintiff made a statement to the jury of the facts which the plaintiff would be able to prove in support of her cause of action, and after stating the facts which were admitted by the answer, made the further statement that in the spring of 1865, the said application for bounty and back pay being pending, the defendant informed the plaintiff's intestate (that is, Margaret Doane) that there was no law that would give her any bounty or back pay, and for that reason none could be obtained, and that thereupon all attempts to secure said bounty and back pay were given up, and the matter was not alluded to between the parties to the suit until the year 1879. That Mrs. Doane, in the

year 1879, renewed her inquiries concerning her right to a pension, and with the assistance of another attorney renewed her application, and forwarded it to the department at Washington, and she was soon notified by communications from the government that the certificate which has been mentioned was issued to her in 1865, and sent to the defendant as her attorney. That she then made application to the defendant and asked him to pay over the money to her, and he insisted that he had paid over the money; that he had never refused to pay it over. There was no dispute but what the defendant did receive and collect the money in the fore part of the year 1865. It was further stated in the opening that the plaintiff never knew or had the least idea that any of the said money had been collected or received by the defendant until one year prior to the commencement of the action. The plaintiff's counsel offered to prove the facts as stated by him, and all the facts alleged in the complaint. The counsel for the defendant thereupon moved for a nonsuit, upon the ground that the claim of the plaintiff was barred by the statute of limitations, and the court granted the motion, upon the ground and for the reason that the statute of limitations was a defense and constituted a bar to a recovery.

*P. C. Williams* and *E. North*, for the appellant.

*O'Brien & Emerson*, for the respondent.

BARKER, J. :

This action is to recover moneys which the defendant admits he has collected and received, as an attorney-at-law, for and at the request of the plaintiff's intestate. The defendant interposes the defense of payment and the statute of limitations as a bar to a recovery. The plaintiff was nonsuited at the trial, upon the statement of facts made to the court and jury in the opening, and the averments set forth in the complaint. The nonsuit was ordered for the reason that the statute of limitations constituted a defense, no other ground being named by the court or suggested by the defendant's counsel.

The provisions of the Code of Civil Procedure, now in force, on the subject of limitations of actions, are not applicable to this case, for the reason that if, upon the facts stated and offered to be proved by

the plaintiff, a defense of this kind should prevail, it was complete and the statute had fully run before they were adopted.

No demand was made upon the defendant for payment over of the moneys which he collected, until just before this action was commenced. Then one was made in due form. The plaintiff's intestate was wholly ignorant of the fact that the defendant had received into his hands the moneys which he was authorized to collect until about the time the demand was made for their payment.

The question to be determined involves an inquiry into the professional behavior of the defendant, for the purpose of ascertaining whether he has done and performed all the duties which he owed his client, and in such time and manner that he is entitled to make the defense which prevailed on the trial.

It is the first duty of an attorney, on receiving money which comes to his hands for his client, to give him notice of the collection, that he may call on the attorney and receive the same or give directions how the same may be remitted. A neglect of this duty is a loss and injury to his principal. The law presumes the use of money to be of value to the owners. If the notice is delayed for an unreasonable length of time, it is reprehensible. If the omission is intentional, the suppression is a deceit, and may well be characterized as a cheat and a fraud. The relation between attorney and client is one of confidence, and so long as he remains unnotified that the demand placed in the hands of his attorney has been settled and paid, he is justified in acting and managing his business affairs upon the supposition that a portion of his estate is an uncollected debt due from his debtor, and not in money in the hands of his attorney.

These are not mere moral questions, but they are legal obligations imposed on the attorney, for a breach of which the injured party is entitled to damages to the extent of charging the attorney with interest on the money.

By our common law an action could not be maintained against an attorney to collect moneys which he had received for his client, until after a demand made upon him for payment and a refusal or neglect to comply with the same, unless it can be made to appear that he had applied the money to his own use, or otherwise wrongfully dealt with the same. (*Taylor* v. *Bates*, 5 Cowen, 376.) Such is the statute now. Section 410 of the Code of Civil Procedure

which is a codification of the law upon the subject, making no change in this particular. The purpose and object of the law being to protect attorneys from the costs of suits and annoyances, so long as they act in good faith and honorably discharge all the duties which they owe to their clients. As an action cannot be maintained until after a demand made, the question arises whether the statute will commence to run in favor of the attorney, and against his client before the right to sue is complete. The statute regulates the subject now. But in this suit it is to be determined by the rule existing before the adoption of the present Code

If the attorney notifies his client of the collection, then it is his duty to make a demand of the attorney for the money within a reasonable time thereafter. And if he fails so to do he puts the statute in motion against himself; and if a suit is not brought within the statutory time, computing the time from the time when the money was received, an attorney may rely on the statute as a bar to a recovery. The reason why the principal should be notified that the collection has been made before the statute can commence to run in favor of the party who has neglected a duty, is so manifest and reasonable that it needs no argument or illustration to secure an unhesitating approval of its wisdom and propriety. The very proposition has been approved in the courts of this State. *Lyle* v. *Murray* (4 Sandf. Supr. Ct. Rep., 591) presents the point, and if not controlling the decision in that case, it was distinctly stated. This was an action against a collecting agent, as appears by the opinion of the court, and it was held to be a general rule that it is the duty of such an agent to pay over money collected as soon as he receive it; that the law imposes on him that obligation, and that the contrary rule which applies to an attorney and a certain class of commercial factors is an exception to the rule. On the question of demand and the application of the statute in such cases the learned court remark, Judge DUER writing the opinion: "Even where an agent, from the peculiar nature or circumstances of his agency, is only bound to pay upon demand, it by no means follows that until a demand no cause of action accrues, so that the statute does not begin to run. It by no means follows that the principal by omitting to make the necessary demand may suspend the operation of the statute for an indefinite period. It is

the duty in all cases of an agent who has collected money on account of his principal to give him immediate notice of the fact, and when the principal has received such notice he is bound to make the requisite demand within a reasonable time; and if he omit to do so he puts the statute in motion, and when he suffers the time which it limits to expire is concluded by his laches." He then refers to the case of *Stafford* v. *Richardson* (15 Wend., 305) and further remarks: " There was no demand in that case until the very day upon which the suit was commenced; but as it appeared in evidence that the plaintiff more than six years before that day had notice that the moneys which he claimed to recover had been received by the defendant, it was very reasonably and justly held that the expiration of the statutory time was an absolute bar. The replications in this case do not aver that notice was not given by the defendant until within six years previous to the commencement of the suit. They only aver that until within that period there was no demand, and therefore implied what is certainly not true, that until such demand the causes of action could not have accrued."

The case upon which the defendant mostly relies in support of the defense is *Stafford* v. *Richardson* (*supra*), where it was held that a demand was necessary before a suit could be maintained, and that the statute time would also run in favor of the attorney, although no demand had been made upon him by his client for the money. In this case it did appear that the attorney had discharged his duty by giving his client notice of the collection, and that the money was at his disposal, and had in fact paid over a part. The very learned counsel who appeared for the defendant in that case based their arguments upon the fact that the client knew from information derived from his attorney that the money was in hand and at his disposal, and that he alone was guilty of laches, and the statute should apply. The court adopted the argument thus presented, and in the opinion of the court the same views are plainly expressed. The court remarked: " Having received the plaintiff's money, he should either have remitted it to him or given him notice of having received it, that the plaintiff might have called for it or ordered it to be remitted. The defendant had actually remitted fifty dollars, as appears in the case, without waiting orders for that purpose." The court further remarks: " But if an attor-

ney may shield himself from responsibility, upon the ground that no demand has been made, it does not follow that the client can excuse his laches by a principle which is intended to protect from costs an agent who has acted honestly and intelligently in the business of his principal. * * * Although, therefore, an attorney may protect himself from suit by want of a demand, he is not, for that reason, to be subject all his lifetime to demands, however stale. If a demand was necessary in this case, the plaintiff should have made it in season to have brought his suit within six years after the defendant *had converted* the property received by him to his own use. * * * The plaintiff therefore should have brought his suit within six years from that time; and it is no excuse for him that he had made no demand. It was his own fault that he had not put himself in a condition to sue, and he can never take advantage of his own laches." The case of *Hickok* v. *Hickok* (13 Barb., 632) has no just application, for the court held that the defendant in that case was not an attorney-at-law, and was not within the reason of the rule which exempts them from an action without a previous demand. All the cases cited on the defendant's brief have been carefully examined, and they are not in point, and do not conflict with the cases before mentioned.

By section 410 of the present Code it is provided, that where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time the right to make the demand is complete, except that where the right grows out of the receipt or detention of money or property by an agent, trustee, attorney, or other person, acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends.

Our examination leads us to the conclusion that this provision of the statute is but a compilation of the law as it existed at the time of its adoption, and the codification was simply to clear away all doubts upon the subject, and to make a precise and accurate statement of the law on the subject.

Upon the statement of the facts made to the court and jury in this case, it is made to appear that the defendant received this

money in 1865, and suppressed from his client the fact that he had received the same, and intentionally kept her in ignorance of the collection, until a demand was made upon him to pay the same over, in the year 1879, just before the commencement of this action.

This case presents some exceptional features, which should have consideration in disposing of the defense that the plaintiff's cause of action is barred. It was uncertain whether the claim presented for a pension would be allowed, and if so when. The mode and manner of remittance by the government was also unknown to the claimant, or when it would be made. It would be a harsh and an unjust law, that a party under such circumstances is guilty of laches in omitting to make a demand upon his attorney for moneys which he had collected, until he was informed of the fact.

There is the additional circumstance that just before the money was paid over to the defendant he gave the deceased an opinion, in very positive terms, that there was no law which entitled her to a pension, and none would be allowed on her claim. This doubtless had effect upon her mind as she did not again call on the defendant in relation to the matter. If the deceased had been promptly informed by the defendant that the pension had been allowed and paid who can believe that she would have suffered this bounty from the government to remain unclaimed until it was outlawed. It is a satisfaction to the court to find sufficient legal ground for setting aside the nonsuit.

New trial granted, with costs to abide event.

Present — SMITH, P. J., and BARKER, J.; HARDIN, J., not sitting.

New trial ordered, costs to abide event.